# Exhibit 1

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

| | |
|---|---|
| **STATE OF SOUTH CAROLINA** | ) **IN THE COURT OF COMMON PLEAS** |
| | ) |
| **COUNTY OF SPARTANBURG** | ) **SEVENTH JUDICIAL CIRCUIT** |
| | ) |
| | ) |
| WOODRUFF-ROEBUCK WATER | ) C.A. No.: 2024-CP-42-02480 |
| DISTRICT, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) |
| | ) |
| AFL TELECOMMUNICATIONS, LLC; | ) **AMENDED SUMMONS** |
| CRYOVAC, INC.; CRYOVAC, LLC; GTI | ) (JURY TRIAL DEMANDED) |
| CHEMICAL SOLUTIONS, INC.; GTI | ) |
| CHEMICAL SOLUTIONS, LLC; M. | ) |
| LOWENSTEIN CORPORATION; MOCOM | ) |
| COMPOUNDS CORPORATION; PLASTIC | ) |
| OMNIUM AUTO EXTERIORS, LLC; | ) |
| ROEBUCK DISPOSAL, LLC; SPRINGS | ) |
| INDUSTRIES, INC.; STARCHEM, LLC; | ) |
| SYNTHOMER USA, LLC; TORAY | ) |
| COMPOSITE MATERIALS AMERICA, | ) |
| INC.; WASTE MANAGEMENT OF | ) |
| SOUTH CAROLINA, INC., | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

**TO THE DEFENDANTS ABOVE-NAMED:**

YOU ARE HEREBY SUMMONED and required to answer the Amended Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your answer to thereto upon the subscribers at 291 S. Pine Street, Spartanburg, South Carolina 29302, within fifteen (15) days after service hereof, exclusive of the day of such service. If you fail to answer the Amended Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Amended Complaint.

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

*/s/ John B. White, Jr.*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiff*

July 8, 2024

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF SPARTANBURG** | ) | **SEVENTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| WOODRUFF-ROEBUCK WATER | ) | C.A. No.: 2024-CP-42-02480 |
| DISTRICT, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AFL TELECOMMUNICATIONS, LLC; | ) | **AMENDED COMPLAINT** |
| CRYOVAC, INC.; CRYOVAC, LLC; GTI | ) | (JURY TRIAL DEMANDED) |
| CHEMICAL SOLUTIONS, INC.; GTI | ) | |
| CHEMICAL SOLUTIONS, LLC; M. | ) | |
| LOWENSTEIN CORPORATION; MOCOM | ) | |
| COMPOUNDS CORPORATION; PLASTIC | ) | |
| OMNIUM AUTO EXTERIORS, LLC; | ) | |
| ROEBUCK DISPOSAL, LLC; SPRINGS | ) | |
| INDUSTRIES, INC.; STARCHEM, LLC; | ) | |
| SYNTHOMER USA, LLC; TORAY | ) | |
| COMPOSITE MATERIALS AMERICA, | ) | |
| INC.; WASTE MANAGEMENT OF | ) | |
| SOUTH CAROLINA, INC., | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

Plaintiff, WOODRUFF-ROEBUCK WATER DISTRICT, by and through the undersigned counsel, brings this action against the above-named Defendants for compensatory and punitive damages, injunctive relief, and abatement of a nuisance, and alleges as follows:

## STATEMENT OF THE CASE

1.     Plaintiff, Woodruff-Roebuck Water District, brings this action to address Defendants' ongoing contamination of the North Tyger River, Middle Tyger River, South Tyger River, and Plaintiff's property with certain toxic per- and polyfluoroalkyl substances ("PFAS"): perfluorooctanoic acid ("PFOA"); perfluorooctanesulfonic acid ("PFOS"); perfluorononanoic acid

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

("PFNA"); perfluorobutane sulfonate ("PFBS"); perfluorohexane sulfonate ("PFHxS"); and hexafluoropropylene oxide dimer acid ("HFPO-DA" or "GenX Chemicals").

2.     Defendants have discharged and continue to discharge products that contain or degrade to these PFAS to the North, Middle, and South Tyger Rivers, which travel downstream to Plaintiff's water intakes on the North and South Tyger Rivers and contaminate both Plaintiff's property and the domestic water supply for nearly 12,000 water customers in Spartanburg County. Plaintiff seeks a declaratory judgment, injunctive relief, abatement, damages, and an award of costs, including attorneys' fees, for Defendants' repeated and ongoing PFAS contamination.

3.     Plaintiff is a special purpose district that provides potable water to residents of Spartanburg County. It is the owner and occupant of riparian land on, and near the confluence of, the North and South Tyger Rivers. There, Plaintiff owns and operates the Woodruff-Roebuck Water District Water Treatment Plant (a surface water treatment plant, or "SWTP") and related buildings, improvements, and equipment that make up its water distribution system. Plaintiff operates separate water intakes on each river, from which it draws raw water for treatment in the SWTP before distribution of treated water to customers.

4.     Defendants own and/or operate industrial facilities upstream of Plaintiff's water intakes and have in the past and/or currently use products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in their industrial processes. Defendants discharge these products to surface waters via certain wastewater treatment plants ("WWTPs") located upstream of Plaintiff's water intakes. These WWTPs include the Lower North Tyger River WWTP in Spartanburg, South Carolina; the Lyman WWTP in Lyman, South Carolina; and the Maple Creek WWTP in Greer, South Carolina.

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

5.      Industrial wastewater from Defendants' facilities contains high levels of PFAS, which cannot be adequately removed by conventional wastewater treatment processes at WWTPs; are discharged to the South, Middle, and North Tyger Rivers; and flow downstream to Plaintiff's SWTP. As a direct and proximate result of Defendants' actions, Plaintiff has suffered losses to the use and enjoyment of its property rights, and Plaintiff's property has been, and will continuously be, trespassed and damaged by water contaminated with dangerous concentrations of PFAS.

6.      Defendants' PFAS contaminates Plaintiff's water sources at concentrations well exceeding what the U.S. Environmental Protection Agency ("EPA") deems unsafe for consumption. And Plaintiff's existing water treatment processes cannot remove them. Instead, Plaintiff requires new water filtration technologies to remove, and provide water free from, Defendants' PFAS.

7.      As a result of Defendants' intentional, willful, wanton, reckless, and/or negligent acts and omissions and the nuisance thereby created, maintained, and continued, Plaintiff has suffered injury to its property rights and resulting damages, including compensatory and consequential damages. Plaintiff is also seeking equitable and injunctive relief requiring the Defendants to cease discharging PFAS into the North, Middle, and South Tyger Rivers; and requiring Defendants to fund the acquisition, installation, and operation of water treatment technologies at Plaintiff's SWTP that will remove Defendants' PFAS from drinking water. In addition, based on the Defendants' intentional, willful, wanton, reckless, malicious, and oppressive misconduct, Plaintiff is seeking the recovery of punitive damages.

## DISCLAIMER

8.      Plaintiff makes no assertion of fact concerning, and brings no cause of action based on, the manufacture, sale, distribution, use, or disposal of PFAS associated with aqueous film

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

forming foam ("AFFF"), whether commercial, MilSpec, or other variety. Plaintiff expressly disclaims any causes of action, injury, or damages resulting from the manufacture, sale, distribution, use, or disposal of any AFFF by any Defendant or third-party.

9.     All Plaintiff's causes of action arise under South Carolina law, and Plaintiff brings no cause of action and seeks no relief under federal law or statute.

## JURISDICTION AND VENUE

10   5.     This Court has subject matter jurisdiction over this action pursuant to Article V of the Constitution of the State of South Carolina; sections 6-11-1610 and 14-1-80 of the South Carolina Code; and Act No. 1101, 1956 S.C. Acts 2481.

11   6.     This Court has personal jurisdiction over all Defendants, consistent with due process and South Carolina's long-arm statute, section 36-2-803 of the South Carolina Code.

12   7.     Venue is properly in this Court pursuant to sections 15-7-10 and -30 of the South Carolina Code because the subject of the action is for injuries sustained to Plaintiff's property located in Spartanburg County, the most substantial part of Defendants' alleged acts or omissions occurred in Spartanburg County, and numerous Defendants maintain their principal places of business in Spartanburg County. *See id.* at § 15-7-30(B) ("If there is more than one defendant, the action may be tried in any county where the action properly may be maintained against one of the defendants pursuant to this section.").

## PARTIES

### I.     Plaintiff

13   8.     Plaintiff Woodruff-Roebuck Water District is a special purpose district originally created for the distribution of potable water and provision of sewer services. *See* Act No. 1101, 1956 S.C. Acts 2481.

4

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

14  9.    Plaintiff owns land located at 1101 Kitchens Road, Roebuck, South Carolina 29376, on which it operates the Woodruff-Roebuck Water District SWTP and related buildings, improvements, and equipment that make up its water distribution system. Plaintiff's property is riparian to both the North and South Tyger Rivers, which are Plaintiff's two raw water sources. Plaintiff uses eight total water intake pumps—four on the North Tyger River, and four on the South Tyger River—from which it draws raw water for treatment and provision of water to its customers in Spartanburg County.

15  10.   The Woodruff-Roebuck Water District SWTP provides potable water for approximately 12,000 customers.

## II.    Defendants

16  11.   Defendant **AFL Telecommunications, LLC ("AFL")** is a Delaware limited liability company authorized to do business in South Carolina. AFL maintains its United States headquarters and principal place of business in Spartanburg County at 170 Ridgeview Center Drive, Duncan, South Carolina, 29334. AFL operates several industrial facilities in Duncan, at 150 Ridgeview Center Drive; 104 Hidden Lake Circle; 110 Hidden Lake Circle; 112 Hidden Lake Circle; and 115 USAC Drive. There, AFL uses products that contain or degrade to PFOA, PFOS, PFNA, PFHxS, PFBS, and/or GenX Chemicals in manufacturing telecommunications products. As part of its processes, the AFL facilities discharge industrial wastewater contaminated with products that contain or degrade to these PFAS to the Lyman WWTP. The Lyman WWTP cannot remove AFL's PFAS, which it discharges into the Middle Tyger River upstream of Plaintiff's water intake. AFL's PFAS resist environmental degradation, flow downstream the Middle Tyger River and the North Tyger River, and thereby contaminate Plaintiff's property and its water source.

5

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

17   12.    Defendant **Cryovac, Inc.** is a Delaware corporation authorized to do business in South Carolina, and Defendant **Cryovac, LLC** is a Delaware limited liability company authorized to do business in South Carolina **(collectively "Cryovac")**. Cryovac maintains an industrial facility in Spartanburg County at 1502 East Main Street, Duncan, South Carolina 29334. There, Cryovac uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in food packaging manufacturing. As part of its processes, Cryovac's plant discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to the Lyman WWTP. The Lyman WWTP cannot remove Cryovac's PFAS, which it discharges into the Middle Tyger River upstream of its confluence with, and Plaintiff's water intake on, the North Tyger River. Cryovac's PFAS resist environmental degradation, flow downstream the Middle Tyger and North Tyger Rivers, and thereby contaminate Plaintiff's property and its water source.

18   13.    Defendant **M. Lowenstein Corporation** ("MLC") was a New York corporation authorized to do business in South Carolina and operated a large complex of textile manufacturing facilities in Lyman. The complex included the Lyman Mill, located at 101 Groce Road, Lyman, South Carolina 29365; and the Lyman Finishing Plant, located at 320 Wamsutta Drive, Lyman, South Carolina 29365. Defendant MLC operated the Lyman Mill and Lyman Finishing Plant from 1955 to 1986. Defendant **Springs Industries, Inc. ("Springs")** acquired the Lyman Mill from MLC and operated it until 2005. Over the course of their operations, Defendants MLC and Springs used products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of textile products. As part of their processes, Defendants MLC and Springs discharged industrial wastewater with products that contain or degrade to these PFAS to the Lyman WWTP. The Lyman WWTP could not remove Defendants' PFAS, which it discharged

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

into the Middle Tyger River upstream of its confluence with, and Plaintiff's water intake on, the North Tyger River. Defendants' PFAS resist environmental degradation, flow downstream the Middle and North Tyger Rivers, and thereby contaminate Plaintiff's property and its water sources.

14. Defendant **MOCOM Compounds Corporation ("MOCOM")** is a Texas corporation with its corporate headquarters in Spartanburg County, at 1720 E. Main Street, Duncan, South Carolina 29334. There, MOCOM operates an industrial facility that uses products that contain or degrade to PFOA, PFOS, PFNA, PFHxS, PFBS, and/or GenX Chemicals in plastic compounding and plastic component manufacturing. As part of its processes, the MOCOM facility discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to the Lyman WWTP. The Lyman WWTP cannot remove MOCOM's PFAS, which it discharges into the Middle Tyger River upstream of its confluence with, and Plaintiff's water intake on, the North Tyger River. MOCOM's PFAS resist environmental degradation, flow downstream the Middle and North Tyger Rivers, and thereby contaminate Plaintiff's property and its water sources.

15. Defendant **Plastic Omnium Auto Exteriors, LLC ("Plastic Omnium")** is a Delaware limited liability company authorized to do business in South Carolina. Plastic Omnium maintains its South Carolina principal place of business in Spartanburg County at 310 Genoble Road, Greer, South Carolina 29651. There, it operates an industrial facility that uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in manufacturing products related to the automobile industry. As part of its processes, Plastic Omnium's facility discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to the Maple Creek WWTP. The Maple Creek WWTP cannot remove Plastic Omnium's PFAS, which it discharges into Maple Creek upstream of the South Tyger River

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

and Plaintiff's water intake. Plastic Omnium's PFAS resist environmental degradation, flow downstream Maple Creek and the South Tyger River, and thereby contaminate Plaintiff's property and its water source.

16. Defendant **Roebuck Disposal, LLC ("Roebuck Disposal")** is a Delaware limited liability company with its principal place of business located in Spartanburg County at 300 Railroad Street, Roebuck, South Carolina 29376, where it also operates a waste disposal facility. As part of its processes, Roebuck Disposal discharges wastewater contaminated with products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to the Lower North Tyger WWTP. The Lower North Tyger WWTP cannot remove Roebuck Disposal's PFAS, which it discharges into the North Tyger River upstream of Plaintiff's water intake. Roebuck Disposal's PFAS resist environmental degradation, flow downstream the North Tyger Rivers, and thereby contaminate Plaintiff's property and its water sources.

17. Defendant **Starchem, LLC ("Starchem")** is a Georgia limited liability company authorized to do business in South Carolina. Starchem maintains its United States principal place of business in Spartanburg County at 10150 Greenville Highway, Wellford, South Carolina 29385. There, it operates an industrial facility where it uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in manufacturing products related to the textile industry. Defendants **GTI Chemical Solutions, Inc. ("GTI Inc.")** and **GTI Chemical Solutions, LLC ("GTI LLC")** (collectively **"GTI Defendants"**) are South Carolina companies that engage in chemical manufacturing activities on the same property. As part of their processes, Starchem and GTI Defendants discharge industrial wastewater contaminated with products that contain or degrade to these PFAS to the Lyman WWTP in Lyman, South Carolina. The Lyman WWTP cannot remove Starchem's and GTI Defendants' PFAS, which it discharges into the

Middle Tyger River upstream of its confluence with, and Plaintiff's water intake on, the North Tyger River. Starchem's and GTI Defendants' PFAS resist environmental degradation, flow downstream the Middle and North Tyger Rivers, and thereby contaminate Plaintiff's property and its water sources.

18. Defendant **Synthomer USA, LLC ("Synthomer")** is a Delaware limited liability company authorized to do business in South Carolina. Synthomer maintains an industrial facility in Spartanburg County at 200 Railroad Street, Roebuck, South Carolina 29376. There, it uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in polymer manufacturing. As part of its processes, Synthomer's plant discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to the Lower North Tyger WWTP. The Lower North Tyger WWTP cannot remove Synthomer's PFAS, which it discharges into the North Tyger River upstream of Plaintiff's water intake. Synthomer's PFAS resist environmental degradation, flow downstream the North Tyger River, and thereby contaminate Plaintiff's property and its water sources.

19. Defendant **Toray Composite Materials America, Inc. ("Toray")** is a Washington corporation authorized to do business in the State of South Carolina that, since approximately 2016, has conducted business in Spartanburg County. Toray maintains its South Carolina principal place of business in Spartanburg County at 2202 Moore Duncan Highway, Moore, South Carolina 29369. There, it operates an industrial facility where it uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in carbon-fiber and other composite materials manufacturing. As part of its processes, Toray's plant discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to the Lower North Tyger WWTP. The Lower North Tyger WWTP cannot remove Toray's PFAS, which it discharges into

9

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

the North Tyger River upstream of Plaintiff's water intake on the river. Toray's PFAS resist environmental degradation, flow downstream the North Tyger River, and thereby contaminate Plaintiff's property and its water sources.

20.    Defendant **Waste Management of South Carolina, Inc. ("WM")** is a South Carolina corporation that, at all times relevant herein, has conducted business within Spartanburg County. Beginning in 1979, WM owned and operated the Palmetto Landfill located at 360 New Hope Road, Wellford, South Carolina 29385. The Palmetto Landfill closed in December 2016 but continues to discharge landfill leachate to the Lyman WWTP. WM's leachate contains vast amounts of PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors. Nearby, WM also operates its Spartanburg Hauling facility, which discharges wastewater contaminated with products that contain or degrade to these PFAS to the Lyman WWTP. The Lyman WWTP cannot remove WM's PFAS, which it discharges into the Middle Tyger River upstream of its confluence with, and Plaintiff's water intake on, the North Tyger River. WM's PFAS resist environmental degradation, flow downstream the Middle and North Tyger Rivers, and thereby contaminate Plaintiff's property and its water sources.

## FACTUAL ALLEGATIONS

### I.    Background and Hazards of PFAS

21.    PFAS are a large group of man-made chemicals that do not occur naturally in the environment. Due to their strong carbon-fluorine bonds, PFAS are extremely stable, repel both oil and water, and are resistant to heat and chemical reactions. As a result of these properties, PFAS have a wide variety of industrial, commercial, and consumer applications.

22.    The stable carbon-fluorine bonds that make PFAS pervasive in industrial, commercial, and consumer products also result in their persistence in the environment. They are colloquially termed "forever chemicals," as terminal PFAS have no known environmental

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

breakdown mechanism, are readily absorbed into biota, and tend to bioaccumulate with repeated exposure.

28      23.      There are both polymer and non-polymer PFAS. Non-polymer PFAS include well-known substances like PFOA, PFOS, PFHxS, PFNA, PFBS, and HFPO-DA aka GenX Chemicals. Polymer PFAS include fluoropolymers and side-chain fluorinated polymers that are often the active chemistry in PFAS products utilized by Defendants.

29      24.      There are also both terminal PFAS and their precursors. Precursors may undergo environmental degradation that ultimately results in the formation of terminal PFAS—meaning no further degradation occurs under normal environmental conditions. PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals are all terminal PFAS.

30      25.      Both polymer and non-polymer PFAS can degrade to terminal PFAS. Generally, terminal PFAS are present in or otherwise form from PFAS products via three primary routes: (1) as a direct byproduct of the manufacturing process; (2) the degradation of precursor PFAS that are byproducts of the manufacturing process; and/or (3) the degradation of polymer PFAS into terminal PFAS and precursor PFAS.

31      26.      PFAS leach from soil to groundwater and are highly mobile and water soluble, making groundwater and surface water particularly vulnerable to contamination. Therefore, a major source of human exposure to PFAS is through ingestion of contaminated drinking water. Exposure is dose-additive, meaning that exposure to low levels of multiple PFAS, which individually would pose little or no risk, can result in a combined dose capable of causing adverse health effects.

32      27.      While there are thousands of different PFAS chemicals, current scientific evidence shows that harmful health effects can result from consuming drinking water with any level of

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

PFOA or PFOS, and at certain aggregate levels of PFHxS, PFNA, PFBS, and GenX Chemicals. Depending on the type of PFAS, negative health effects include increased risk of certain types of cancer and adverse impacts on fetal growth and development; reproduction; and on liver, thyroid, immune, cardiovascular, and/or nervous system function.

33    28.    PFOA and PFOS have been the most widely used PFAS, and they are the most studied by regulators and the scientific community. While some industries voluntarily phased out products containing PFOA and PFOS by 2015, their limited use continues even in the United States. Due to their persistent nature, PFOA and PFOS remain in the environment from decades of legacy industrial use.

34    29.    Products based on PFAS consisting of shorter fluorinated carbon chains were developed to replace PFOA and PFOS, and they are now used in industrial applications to confer similar properties and characteristics. These "short-chain" PFAS are still bioaccumulative and environmentally persistent, and some short-chain PFAS products nevertheless still contain PFOA and PFOS and their precursors.  Terminal short-chain PFAS include PFHxS, PFNA, PFBS, and GenX Chemicals.

35    30.    Based on the science available in 2009, EPA published provisional drinking water health advisories for short-term exposure to PFOA and PFOS. U.S.E.P.A., Provisional Health Advisories for Perfluorooctanoic Acid (PFOA) and Perfluorooctane Sulfonate (PFOS) (Jan. 8, 2009),    *available    at*    https://www.epa.gov/sites/default/files/2015-09/documents/pfoa-pfos-provisional.pdf. The advisory levels for PFOA were 400 parts per trillion ("ppt") and 200 ppt for PFOS. In the same publication, EPA reported that it conducted sampling of public drinking water in Alabama communities, finding PFOA and PFOS levels lower than 40 ppt. It explained, "Based

on its current understanding, EPA believes these levels are not of concern and residents may rely upon public water systems."

36   31.    On May 16, 2016, due to the evolution of science on the health effects of PFOA and PFOS, EPA published lifetime health advisory levels for each chemical in drinking water. Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate, 81 Fed. Reg. 33250 (May 25, 2016). Superseding 2009 provisional levels, the 2016 levels for PFOA and PFOS were 70 ppt, independently or in the aggregate. EPA explained that its new health advisories "identify the concentration of PFOA and PFOS in drinking water at or below which adverse health effects are not anticipated to occur over a lifetime of exposure."

37   32.    EPA's 2016 Health Advisories were based on peer-reviewed studies of the effects of PFOA and PFOS on laboratory animals and epidemiological studies of human populations exposed to PFOA and PFOS. These studies indicated that exposure to PFOA and PFOS over certain levels may result in adverse health effects, including developmental defects to fetuses, cancer (testicular, kidney), liver effects, immune effects, thyroid effects, and other adverse effects. But based on its review of the science, EPA stated that its analysis indicated exposure to PFOA and PFOS at or below health advisory levels "will not result in adverse health effects (including cancer and non-cancer) to the general population over a lifetime (or any shorter period) of exposure to these chemicals." *Id.*

38   33.    On June 15, 2022, EPA again updated health advisory levels for PFOA and PFOS on an interim basis, which replaced 2016 advisory levels. Lifetime Drinking Water Health Advisories for Four Perfluoroalkyl Substances, 87 Fed. Reg. 36848 (June 21, 2022). EPA explained that updated human epidemiological data indicated "that the level at which negative

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

health effects could occur are much lower than previously understood when the agency issued its 2016 health advisories for PFOA and PFOS"—finding "associations between PFOA and/or PFOS exposure and effects on the immune system, the cardiovascular system, development (e.g., decreased birth weight), and cancer." *Id.* Concerned with the public health implications of its data, EPA issued interim levels pending determination of maximum contaminant levels and maximum contaminant level goals. The interim levels were 0.004 ppt for PFOA and 0.02 ppt for PFOS.

39.    34.    Simultaneously, EPA also issued health advisories for the first time covering PFBS and GenX Chemicals. EPA reported that "GenX Chemicals have been linked to health effects on the liver, the kidney, the immune system, and developmental effects, as well as cancer." *Id.* For PFBS, it noted studies indicating health effects on the thyroid, reproductive system, development, and kidney. Based on its 2021 toxicity studies for these chemicals, EPA released final health advisories for each: GenX Chemicals at 10 ppt and PFBS at 2,000 ppt.

40.    35.    In March of 2023, EPA issued proposed maximum contaminant level ("MCL")s and maximum contaminant level goal ("MCLG")s for PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals. PFAS Nat'l Primary Drinking Water Regulation Rulemaking, 88 Fed. Reg. 18638 (Mar. 29, 2023) (to be codified at 40 C.F.R. pt. 141, 142). An MCLG is the maximum level of a contaminant in drinking water at which no known or anticipated adverse effect on the health of persons would occur, allowing an adequate margin of safety. An MCL is the maximum allowable level of a contaminant that may be delivered to any user of a public water system and is based on the feasibility of existing technology to detect PFAS at a threshold level.

41.    36.    At that time, EPA announced that, "[f]ollowing a systematic review of available human epidemiological and animal toxicity studies, EPA has determined that PFOA and PFOS are likely to cause cancer (e.g., kidney and liver cancer) and that there is no dose below which either

chemical is considered safe." *Id.* Therefore, it proposed MCLG levels for both chemicals at zero ppt. Enforceable MCL levels for each chemical were proposed at 4 ppt. According to EPA, "[a]ny exceedance of this limit requires action to protect public health, regardless of any mixture in which they are found." *Id.*

42    37.    Due to their toxic effects, dose additivity, and presence in drinking water, EPA proposed a hazard index approach covering mixtures of PFHxS, PFNA, PFBS, and GenX Chemicals. The hazard index is the sum of each PFAS's "hazard quotient." Hazard quotients are first calculated by dividing the applicable PFAS's "exposure metric" (i.e., concentration in drinking water) by its "health reference value" (PFHxS: 9 ppt; GenX Chemicals: 10 ppt; PFNA: 10 ppt; PFBS: 2,000 ppt). If the sum of each's hazard quotient is below 1.0, then it "represents a level at which no known or anticipated adverse effects on the health of persons is expected to occur and which allows for an adequate margin of safety." *Id.* If greater than 1.0, then "potential risk is indicated." *Id.*

43    38.    EPA stated that, once its proposed MCLs became final, it would "save thousands of lives and prevent tens of thousands of avoidable illnesses." U.S.E.P.A., *EPA Releases Annual Report Showing Steady Progress to Protect Communities from PFAS Pollution* (Dec. 14, 2023), *available at* https://www.epa.gov/newsreleases/epa-releases-annual-report-showing-steady-progress-protect-communities-pfas-pollution.

44    39.    EPA finalized its proposed MCLs and MCLGs on April 10, 2024. U.S.E.P.A., PFAS Nat'l Primary Drinking Water Regulation Rulemaking (Apr. 10, 2024), *available at* https://www.epa.gov/system/files/documents/2024-04/pfas-npdwr_prepubfederalregisternotice_4.8.24.pdf (pre-publication version). In accompanying publications, EPA declared, "The science is clear: exposure to these six PFAS is linked to significant health risks" that include "certain

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

cancers and heart impacts in adults, and immune and developmental impacts in infants and children." U.S.E.P.A., *Frequently Asked Questions and Answers: Final PFAS Nat'l Drinking Water Regulation* (Apr. 10, 2024); *see also* U.S.E.P.A., Final PFAS Nat'l Drinking Water Regulation Landing Page, http://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas (providing links to EPA PFAS regulation publications).

45    40.    The final regulation solidifies MCLs of 4.0 ppt for PFOA and PFOS and 10.0 ppt for PFNA, PFHxS, and GenX Chemicals, including a Hazard Index that covers mixtures of PFBS with PFNA, PFHxS, and GenX Chemicals. It also enshrines MCLGs of zero ppt for PFOA and PFOS, which EPA states "reflects the latest science showing that there is no level of exposure to these two PFAS without risk of health impacts." U.S.E.P.A., *Presentation: Overview EPA PFAS NPDWR* (Apr. 10, 2024). According to EPA, "[t]he more you reduce your exposure to PFAS, the more you reduce your risk." U.S.E.P.A., *Frequently Asked Questions and Answers: Final PFAS Nat'l Drinking Water Regulation* (Apr. 10, 2024).

46    41.    EPA's final regulations mandate several new obligations regarding PFAS, including the implementation of solutions to reduce regulated PFAS concentrations in the drinking water that Plaintiff distributes, maintenance of ongoing compliance monitoring, and informing the public of PFAS levels in the water and of any violations. By 2027, Plaintiff must begin conducting and reporting regular PFAS monitoring, and by 2029, Plaintiff must comply with all MCLs.

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

## II.    Contamination of the Tyger River System and Plaintiff's Water Supply with PFAS

47  42.    The Tyger River System begins as three forks—the South, Middle, and North Tyger Rivers—running southeast through Spartanburg County. The Middle Tyger converges with the North Tyger in Moore, South Carolina, and the North and South Tyger Rivers converge in Roebuck, South Carolina:



ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

48    43.    As shown above, the Maple Creek WWTP, Lyman WWTP, and Lower North Tyger WWTP operate upstream of or along each river, and Plaintiff's SWTP rests near the confluence of the North and South Tyger Rivers.

49    44.    Plaintiff's SWTP employs water intakes on both the North and South Tyger Rivers:



50    45.    PFAS sampling of the South, Middle, and North Tyger Rivers confirms the presence of PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals throughout these bodies of water. The concentrations increase further downstream, culminating in high levels at Plaintiff's water intakes on the South and North Tyger Rivers. Indeed, sampling at Plaintiff's water intakes confirm the presence of PFOA and PFOS at concentrations much higher than what EPA deems unsafe for consumption. Defendants are the source.

51  46.    Defendants are owners and operators of manufacturing plants, related industrial facilities, and/or waste disposal services in or near Spartanburg County. In their industrial processes, Defendants utilize products that contain or degrade to PFOS, PFOA, PFHxS, PFNA, PFBS, and/or GenX Chemicals. Defendants' industrial processes generate industrial wastewater containing these PFAS chemicals and/or their precursors, which they discharge to either the Maple Creek WWTP, the Lyman WWTP, or the Lower North Tyger WWTP.

52  47.    The Maple Creek WWTP utilizes conventional wastewater treatment methods to treat industrial wastewater, which are unable to remove PFAS. After treatment, the Maple Creek WWTP discharges water contaminated with Defendants' products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals into Maple Creek upstream of the South Tyger River. These PFAS and their precursors flow downstream to Plaintiff's water intake on the South Tyger River, damaging Plaintiff's property and contaminating its water source.

53  48.    The Lyman WWTP utilizes conventional wastewater treatment methods to treat industrial wastewater, which are unable to remove PFAS. After treatment, the Lyman WWTP discharges water contaminated with Defendants' products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals into the Middle Tyger River upstream of its confluence with the North Tyger River. These PFAS and their precursors flow downstream to Plaintiff's water intake on the North Tyger River, damaging Plaintiff's property and contaminating its water source.

54  49.    The Lower North Tyger WWTP utilizes conventional wastewater treatment methods to treat industrial wastewater, which are unable to remove PFAS. After treatment, the Lower North Tyger WWTP discharges water contaminated with Defendants' products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals into the North Tyger

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

River. These PFAS and their precursors flow downstream to Plaintiff's water intake on the North Tyger River, damaging Plaintiff's property and contaminating its water source.

55    50.    All Defendants knew or should have known that the Maple Creek WWTP, Lyman WWTP, and Lower North Tyger WWTP utilize conventional treatment methods for industrial wastewater that cannot remove Defendants' PFAS. All Defendants also know or should have known that the WWTPs discharge treated effluent contaminated with their PFAS chemicals to the rivers, contaminating the water that Plaintiff draws for its customers.

## III.    Defendants have harmed Plaintiff and Plaintiff's community.

56    51.    Defendants have for decades discharged PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and their precursors into the North, Middle, and South Tyger Rivers, which has caused, and continues to cause, contamination of these waters with PFAS chemicals exceeding EPA's health advisories, MCLGs, and MCLs. Indeed, absent new treatment technologies, Plaintiff cannot use its property and property rights to provide water that is either free of all PFOA and PFOS, or compliant with EPA's MCLs.

57    52.    Defendants' conduct has proximately caused the contamination of the South, Middle, and North Tyger Rivers; and of Plaintiff's land, its SWTP, and its water distribution system with PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals, including PFOA and PFOS at concentrations well above EPA's MCLGs and MCLs.

58    53.    Defendants, individually and acting through their employees and agents, and in concert with each other, have knowingly, intentionally, recklessly, and/or negligently engaged in conduct or omissions that proximately caused unreasonable interference with Plaintiff's right to use and enjoy its property, its right to use the rivers, and has caused Plaintiff additional past, present, and future injury to property.

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

54. Despite knowing that there is no safe dose for PFOA or PFOS, and that PFHxS, PFNA, PFBS, and GenX Chemicals are hazardous to human health, Defendants, directly or indirectly, discharged industrial wastewater contaminated with these chemicals into the South, Middle, and North Tyger Rivers, which they knew or should have known contaminated Plaintiff's property.

## FIRST CAUSE OF ACTION

### Private Nuisance

55. Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

56. Plaintiff is a special purpose district created for the purpose of constructing, operating, maintaining, improving, and extending a water distribution system for residents of Spartanburg County. It uses its properties to effectuate that purpose, including the withdrawal of raw water from the North and South Tyger Rivers, the treatment of raw water, and the distribution of treated water to customers in Spartanburg County.

57. Plaintiff is a riparian landowner abutting the North and South Tyger Rivers, and Plaintiff has a property right in the reasonable use of the rivers, including for the provision of water to its customers.

58. Through the conduct described herein, Defendants created, contributed to, and/or maintained a nuisance; that is, the contamination of the North and South Tyger Rivers with PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals at concentrations far exceeding those EPA deems unsafe for consumption.

59. Due to Defendants' contamination, Plaintiff cannot provide water to its customers without PFAS, or even at PFAS concentrations that comply with EPA's MCLs, absent new water filtration technology.

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

60. Defendants' contamination caused, contributed to, and/or maintains a nuisance that substantially and unreasonably interferes with Plaintiff's use and enjoyment of its property, interferes with Plaintiff's property and its riparian rights, damages Plaintiff's property, and causes Plaintiff additional inconvenience, annoyance, and harm.

61. Defendants, individually and acting through their employees and agents, and in concert with each other, have knowingly, intentionally, recklessly, and/or negligently engaged in conduct that unreasonably interferes with Plaintiff's property rights.

62. As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered, now suffers, and will continue to suffer damages related to Defendants' contamination of the North and South Tyger Rivers and Plaintiff's property, including loss in value, the cost of removing Defendants' PFAS, and other damages to be proved at trial.

63. In addition to its claims for damages, Plaintiff is entitled to injunctive and/or equitable relief to abate the nuisance created, contributed to, and maintained by Defendants.

64. The ongoing contamination of the North and South Tyger Rivers and Plaintiff's property constitutes a continuing irreparable injury for which there is no adequate remedy at law. Plaintiff requests that this Court issue an order and decree requiring Defendants to take all steps necessary to prevent further discharge of PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals and to fund the measures necessary to prevent these PFAS from continuing to interfere with Plaintiff's use and enjoyment of its land and its riparian use of the North and South Tyger Rivers to supply potable water to its customers.

65. Defendants' interference with Plaintiff's use of its property can be abated by methods that include, but are not limited to:

(a)    ceasing Defendants' discharges of products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to surface waters; and

(b)    funding the acquisition, installation, and operation of new water filtration technology at Plaintiff's SWTP to remove legacy PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemical contamination.

71    66.    Defendants are jointly and severally liable to Plaintiffs for all damages resulting from this nuisance, and the costs of its abatement, in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

## SECOND CAUSE OF ACTION

### Public Nuisance

72    67.    Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

73    68.    Plaintiff is a special purpose district created for the purpose of constructing, operating, maintaining, improving, and extending a water distribution system for residents of Spartanburg County. It uses its properties to effectuate that purpose, including the withdrawal of raw water from the North and South Tyger Rivers, the treatment of raw water, and the distribution of treated water to customers in Spartanburg County.

74    69.    Plaintiff's customers use the water Plaintiff provides for many purposes, including drinking, cooking, bathing, cleaning, washing, and watering plants and gardens.

75    70.    Plaintiff's customers, and indeed all residents in Plaintiff's community, have a right to potable water that is reasonably pure and safe for their use—and thus free from contamination by Defendants' PFOA, PFOS, PFNA, PFHxS, PFBS, and GenX Chemicals. Defendants' contamination unreasonably interferes with, disrupts, and threatens public health, safety, and order. Indeed, EPA makes clear that there is no safe dose for consuming PFOA and PFOS.

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

76    71.    Plaintiff has sustained special injuries as a result of Defendants' public nuisance, including but not limited to, the lost use of its property; inability to provide potable water to customers with reasonably safe concentrations of PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals; expenses associated with future acquisition, installation, and operation of required treatment technologies to remove unsafe concentrations of these PFAS from water; expenses incurred in discovering and identifying sources of Defendants' contamination; interference with Plaintiff's riparian right to use the North and South Tyger Rivers; interference with the use of Plaintiff's SWTP and water distribution system; and lost revenue.

77    72.    As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered, now suffers, and will continue to suffer special injury and damages related to Defendants' contamination of the North Tyger River, the South Tyger River, and Plaintiff's property.

78    73.    Defendants, individually and acting through their employees and agents, and in concert with each other, have knowingly, intentionally, recklessly, and/or negligently engaged in conduct that unreasonably interferes with Plaintiff's property rights and endangered the health of Plaintiff's customers, consumers of Plaintiff's drinking water, and Plaintiff's community.

79    74.    As a result of the nuisance caused by Defendants, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including loss in value, the cost of removing Defendants' PFAS, and other damages to be proved at trial.

80    75.    In addition to its claims for damages, Plaintiff is entitled to injunctive and/or equitable relief to abate the nuisance created, contributed to, and maintained by Defendants.

81    76.    Defendants' ongoing contamination constitutes a continuing threat to public health, safety, and order, and it constitutes irreparable injury for which there is no adequate remedy at law. Plaintiff requests that this Court issue an order and decree requiring Defendants to take all

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

steps necessary to prevent further discharge of PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals and to fund the measures necessary to prevent these PFAS from continuing to threaten public health and safety and ensure that Plaintiff's customers and residents of Plaintiff's community receive water free from PFAS.

82    77.    Defendants' contamination of potable water with unsafe concentrations of PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals can be abated by methods that include, but are not limited to:

> (a)    ceasing Defendants' direct and indirect discharges of products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to surface waters; and

> (b)    requiring Defendants to fund the acquisition, installation, and operation of new water filtration technology at Plaintiff's SWTP to remove legacy PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemical contamination.

83    78.    Defendants are jointly and severally liable to Plaintiffs for all damages resulting from this nuisance, and the costs of abatement, in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

### THIRD CAUSE OF ACTION

#### Trespass

84    79.    Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

85    80.    Plaintiff owns, possesses, and actively exercises its right to use its land, SWTP, and related buildings, improvements, and equipment that make up its water distribution system.

86    81.    Defendants intentionally discharged and continue to discharge PFAS to the Maple Creek WWTP, Lyman WWTP, and Lower North Tyger WWTP notwithstanding that they knew and/or reasonably should have known that:

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

(a)      these WWTPs cannot remove their PFAS from wastewater before discharging to the South, Middle, and North Tyger Rivers;

(b)      Plaintiff draws water from the North and South Tyger Rivers for provision of potable water to its customers;

(c)      the water Plaintiff draws from the North and South Tyger Rivers is contaminated with the PFAS the Defendants discharge to these WWTPs; and, thereby,

(d)      water contaminated with high concentrations of Defendants' PFAS invades Plaintiff's properties.

87     82.      Plaintiff has not consented to, and does not consent to, the invasion of its properties by water contaminated with PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals at concentrations exceeding EPA's MCLs and MCLGs and well beyond what EPA deems unsafe for consumption.

88     83.      Defendants' invasions of Plaintiff's properties are continuing and ongoing, and each separate invasion of PFAS-contaminated water constitutes a new trespass each time Plaintiff's water pumps are active.

89     84.      Defendants intend that, while using PFAS in their industrial processes, PFAS-containing wastewater generated by those processes be discharged to the Maple Creek WWTP, Lyman WWTP, or Lower North Tyger WWTP. Defendants' conduct is wanton, willful, and in reckless disregard of Plaintiff's property and riparian rights.

90     85.      Defendants' conduct is the actual and proximate cause of the invasion of PFAS-contaminated water into Plaintiff's properties, including its land, SWTP, and related buildings, improvements, and equipment that make up its water distribution system. The damage to Plaintiff's properties is the direct and proximate result of Defendants' intentional conduct.

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

86. As a direct, proximate, and foreseeable result of Defendants' trespasses, Plaintiff has suffered, now suffers, and will continue to suffer invasion of its property rights and damages, including loss in value, the cost of removing Defendants' PFAS, and other damages to be proved at trial.

87. Defendants' ongoing trespasses can be abated by, among other measures, ceasing all discharges of PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors to the North, Middle, and South Tyger Rivers. In addition to compensatory and punitive damages, Plaintiff requests a permanent injunction prohibiting this conduct.

## FOURTH CAUSE OF ACTION

### Negligence, Gross Negligence, and/or Recklessness

88. Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

89. Defendants have a duty to use due care in the handling, use, and disposal of products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to avoid causing an unreasonable risk of harm to others, which includes preventing the direct and/or indirect discharge of these PFAS into the South, Middle, and North Tyger Rivers, thereby interfering with Plaintiff's property rights and injuring Plaintiff's property.

90. Defendants knew or should have known that the PFAS they discharged were environmentally persistent, bioaccumulative, and dose-additive, that conventional wastewater treatment technologies utilized by their wastewater treatment facilities could not remove their PFAS, and that surface waters—including the South, Middle, and North Tyger Rivers—were vulnerable to the contamination that has taken and now takes place.

91. Defendants nonetheless negligently, recklessly, wantonly, and/or willfully breached their duty in causing products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to escape their premises and contaminate the North, Middle, and

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

South Tyger Rivers, thereby interfering with Plaintiff's property rights and injuring Plaintiff's property.

[97]    92.    As a direct, proximate, and foreseeable result of Defendants' conduct, practices, actions, omissions, and inactions, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including but not limited to loss in value, the cost of removing Defendants' PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals, future costs of acquiring, installing, and operating adequate water treatment technologies, and other damages to be proved at trial.

[98]    93.    Defendants are jointly and severally liable to Plaintiffs for all damages resulting from their conduct, practices, actions, omissions, and inactions, in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands trial by jury, and respectfully requests that the Court grant the following relief:

(a)    Enter a judgment and decree against all Defendants enjoining them from maintaining the nuisance they have caused, created, and maintained;

(b)    Enter a judgment and decree against all Defendants, jointly and severally, requiring them to abate the nuisance they have caused, created, and maintained;

(c)    Enter a judgment and decree against all Defendants enjoining them from continuing their trespasses onto Plaintiff's property;

(d)    Enter a judgment and decree against all Defendants, jointly and severally, requiring them to cease the discharge or release of products that contain or degrade to PFOA, PFOS, PFHxS,

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480

PFNA, PFBS, and/or GenX Chemicals into rivers, streams, and/or tributaries where they contaminate Plaintiff's water supply in the North and South Tyger Rivers;

(e)     Enter a judgment and decree against all Defendants, jointly and severally, requiring them to remove their PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX chemicals from Plaintiff's water system by funding the acquisition, installation, and operation of treatment technology capable of removing them;

(f)     Enter a judgment and decree against all Defendants, jointly and severally, requiring them to prevent the release of PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals into rivers, streams, and tributaries that contaminate Plaintiff's water system;

(g)     Enter a judgment against all Defendants, jointly and severally, for past, present, and future compensatory damages in such amounts as the evidence shows Plaintiff to be justly entitled to recover, including interest and reasonable attorneys' fees and litigation expenses, and punitive damages, as applicable, in an amount sufficient to punish and penalize Defendants, and to deter them from repeating their wrongful conduct, and all costs; and

(h)     Award such other relief and further relief as this Court deems just, proper, and equitable.

Respectfully submitted,

*/s/ John B. White. Jr.*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiff*

July 8, 2024

ELECTRONICALLY FILED - 2024 Jul 08 5:04 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4202480